[No. S042933. Nov. 2, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
PABLO CRUZ MARTINEZ, Defendant and Appellant.

**COUNSEL**

Maureen DeMaio, under appointment by the Supreme Court, and Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

John R. Gorey, Sanjay T. Kumar and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—We granted review for the limited purpose of determining the acts necessary to sustain a conviction under Penal Code section 288.[1] This statute imposes criminal liability on anyone who "willfully and lewdly commits any lewd or lascivious act" upon the body of a child under the age of 14 "with the intent of arousing . . . the lust, passions, or sexual desires" of either party. (*Id.*, subd. (a).)

For almost a century, section 288 has been interpreted to require no particular form of physical contact. The courts have established in a long unbroken line of cases that the crime occurs whenever the trier of fact determines, based on all the circumstances, that an underage child was "touched" with the requisite sexual intent. A construction permitting conviction for any and all sexually motivated contact is supported by the relevant statutory language and surrounding scheme, and apparently has been accepted by the Legislature.

At defendant's urging, the Court of Appeal rejected this long-standing approach. The court concluded that because section 288 literally requires both sexual motivation *and* a "lewd or lascivious *act*" it cannot be violated simply by *any* touching with sexual intent. (*Id.*, subd. (a), italics added.) In other words, no statutory violation occurs under this view unless the act is both sexually motivated and "lewd." Similar reasoning first appeared in *People* v. *Wallace* (1992) 11 Cal.App.4th 568, 574-580 [14 Cal.Rptr.2d 67] (*Wallace*), and has been followed to a greater or lesser extent in several other recent Court of Appeal decisions.

As we explain, this new minority view does not withstand scrutiny. Whether a particular touching is "lewd" and criminal under section 288 cannot be determined separate and apart from the actor's intent. The nature or form of the act circumstantially bears on this determination but has not otherwise been restricted by the Legislature. To the extent the minority cases can be understood to exempt certain sexually motivated touchings from the definition of a "lewd or lascivious act," they are also inconsistent with the basic purpose of the statute as identified in prior decisions of this court. We therefore conclude that the Court of Appeal erred insofar as it departed from the traditional construction of the statute and reversed one of two lewd conduct convictions entered against defendant at trial.

---

[1] All unlabeled statutory references are to the Penal Code.

## I. FACTS

This case concerns separate assaults upon two 13-year-old girls. Both crimes occurred between 7:30 and 8:30 p.m. on June 21, 1992, in the same residential neighborhood in Newhall.

The first victim, Christina L., began walking from the junior high school to a girlfriend's house when she heard footsteps behind her. She turned around and saw defendant, a stranger, standing a few feet away. Defendant asked for the time and she responded.

As Christina turned to leave, defendant lunged towards her, placed his arms around her waist, and pressed her body against his. Christina became frightened, and started to struggle and scream. Defendant twice said, "sh, it's okay," in an apparent attempt to calm her. He then tilted his head, stuck out his tongue, and tried unsuccessfully to kiss her on the lips. Christina testified that defendant "hugged" her for about 20 seconds, and that she continuously tried to break free of his grasp.

At some point, defendant let go of Christina's waist and grabbed her tightly by the wrists behind her back. She kicked and yelled, and eventually attracted the attention of the Perezes, a couple standing outside their house across the street. The Perezes ordered defendant to release Christina and he complied. Christina ran towards the Perezes and waited in their house for the police and her parents to arrive. Defendant loitered outside the Perez home for a few minutes, but he left on foot when Mr. Perez confronted him about the crime and indicated that the police would arrive soon.

The second incident occurred a short time later in a public park about one block from the junior high school. The victim, Magali J., was playing with her cousins in the vicinity of her parents and uncle. When one of the cousins began to yell, Magali's mother looked up and saw defendant standing with his back facing her, holding Magali in front of him. Defendant's right arm was wrapped around Magali's neck or shoulder area, and his left hand covered her mouth. Mrs. J. testified that defendant continued to "hug" Magali as he pushed her a substantial distance toward the perimeter of the park. Magali appeared to be struggling with defendant.

Mrs. J. immediately alerted other family members and ran to help her daughter. Defendant responded by releasing Magali and by punching Mrs. J. —who was nine months pregnant— in the face. Defendant then tried to flee, but he was tackled and restrained by Magali's father and uncle. The police were called and soon arrived. Meanwhile, Christina and Mr. Perez were

driven to the park in another patrol car. They identified defendant as Christina's attacker, and he was arrested for both crimes.

Shortly after defendant's arrest and while still very upset, Magali told her mother that defendant had "touched" or "grabbed" her "chest" during the incident. Magali demonstrated the gesture at trial. According to the prosecutor, "she indicated with her right hand her chest area."[2]

Defendant was charged with committing a forcible lewd act under section 288, subdivision (b), against Christina and Magali in counts 1 and 2, respectively. He was also charged with the attempted kidnapping of Magali and with misdemeanor battery based on his conduct towards Magali's mother, Mrs. J.

As far as we can discern from the limited record, defendant argued at various times in the trial court that no lewd conduct had occurred within the meaning of section 288. The claim was raised in a motion to dismiss the charges before trial, in a request for acquittal made at the close of the prosecution's case, and before jury instructions were given. On such occasions, defendant cited the lack of any evidence that he had kissed Christina or touched the breasts of either girl. Defendant theorized that, at most, he was guilty of attempted child molestation.[3]

The trial court rejected any suggestion that a completed violation of section 288 requires conduct more intimate than the acts described by the victims, or that the evidence otherwise failed to support the lewd conduct counts charged in the information. The court therefore denied defendant's various requests to dismiss, reduce, or acquit him of the lewd conduct charges on this ground, or to instruct on attempted commission of the crime.

In submitting the case to the jury, the trial court gave the standard instruction for lewd conduct by means of force or fear under section 288, subdivision (b). It also instructed on the lesser included offense of lewd conduct under section 288, subdivision (a). Both instructions describe a lewd or lascivious act as "any touching" of the victim committed "with the [requisite] specific intent." (CALJIC Nos. 10.41, 10.42 (5th ed. 1988).)[4] In addition, the jury received standard instructions defining specific intent,

---

[2]At trial, Mrs. J. testified that her daughter was mentally retarded. With the exception of the chest demonstration, Magali did not testify and the crime was described by her mother and uncle.

[3]With the exception of defendant's request for an instruction on attempted lewd conduct, all discussions over jury instructions apparently occurred in chambers and were not reported.

[4]Defendant's jury was instructed in pertinent part as follows: "Every person who willfully and lewdly commits any lewd or lascivious act upon or with the body, or any part or member

allowing such intent to be inferred from the circumstances surrounding the charged act, and requiring a union of act and intent as a condition of conviction under section 288.

The jury found defendant guilty as charged. The court imposed the middle term of six years for each count of forcible lewd conduct under section 288, subdivision (b), and ordered that full consecutive terms be served. (§ 667.6, subd. (d).) The court imposed but stayed sentence on the attempted kidnapping count under section 654, and ordered that the sentence for misdemeanor battery run concurrently with the prison sentence. Thus, defendant received a term of imprisonment totaling 12 years.

On appeal, defendant renewed his attack on the lewd conduct counts. He relied upon *Wallace, supra,* 11 Cal.App.4th 568, which was decided a few months after the verdict in this case. *Wallace* basically held that the standard jury instructions are flawed because they define the requisite act in terms of "any" touching instead of a "lewd and sexual" touching. (*Id.* at p. 571.) Defendant challenged the instructions given at his trial on this ground. Defendant also argued that even assuming he intended sexual arousal, there was no evidence he touched either victim in an inherently "sexual" manner as required by *Wallace*.

Except as otherwise indicated below, the Court of Appeal followed *Wallace*. The court determined that the jury was misled to believe that no particular type of touching was required and that defendant's federal due process rights were violated as a result. The court concluded that the instructional error was harmless as to count 1, because defendant embraced and tried to kiss Christina in a "clearly sexual manner." However, the alleged error was deemed prejudicial as to count 2. The court observed that the record did not disclose whether defendant had touched Magali's breasts or simply her "chest." Because the touching was assertedly more "ambiguous" and less "sexual" in this incident, the court could not conclude that the instructional error was harmless beyond a reasonable doubt. The Court of Appeal therefore reversed count 2. In all other respects, the judgment was affirmed on appeal. We granted the People's petition for review.

---

thereof, of a child under the age of fourteen years, by the use of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the child or another person, and with the specific intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, is guilty of the crime of a lewd act with a child by force or fear in violation of Section 288(b) of the Penal Code. [¶] *A lewd or lascivious act is defined as any touching of the body of a person under the age of fourteen years with the specific intent to arouse, appeal to, or gratify the sexual desires of either party.* [¶] To constitute a lewd or lascivious act it is not necessary that the bare skin be touched. The touching may be through the clothing of the child." (CALJIC No. 10.42 (5th ed. 1988), italics added.)

## II. Discussion

The People claim that the Court of Appeal erred in finding reversible instructional error in count 2. Their basic premise is that both lewd conduct convictions were proper under the traditional instructions which were received by the jury and which defined the crime in terms of "any touching" committed with the requisite lewd intent.

Defendant, by contrast, urges the view of *Wallace, supra,* 11 Cal.App.4th 568, the instant Court of Appeal, and a minority of other courts, that the statutory language does not support the "any touching" rule. He points out that section 288 separately requires sexual "intent" *and* a "lewd or lascivious act." (*Id.,* subd. (a), italics added.) Each of these elements, "lewd" act and sexual "intent," is necessary to a completed violation under this approach.

We agree with the People and reject defendant's suggestion that no crime occurred because neither victim was touched in an inherently lewd manner. Any attempt to parse this venerable statute in the manner urged by defendant is not supported by its language, context, purpose, and long-settled construction. We will therefore adhere to the overwhelming weight of authority that section 288 is violated by "any touching" of an underage child committed with the intent to sexually arouse either the defendant or the child.

At the outset, the literal language does not support the construction urged by defendant and other proponents of the minority view.[5] Contrary to what defendant claims, a "lewd or lascivious act" is defined expansively to include contact "upon or with the [victim's] body, or any part or member thereof." (§ 288, subd. (a).) Nothing in this language restricts the manner in which such contact can occur or requires that specific or intimate body parts be touched. Rather, a touching of "any part" of the victim's body is specifically prohibited.

This broad and amorphous language differs markedly from other statutes in the same "family" of crimes. (*People* v. *Harrison* (1989) 48 Cal.3d 321,

[5]Section 288 imposes felony liability upon "[a]ny person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ." (*Id.,* subd. (a).) Defendant was convicted under subdivision (b), which applies to anyone who "*commits an act described in subdivision (a)* by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim . . . ." (Italics added.) We quote the statute as most recently amended in 1994, after defendant's crimes were committed. There is no substantive difference between the current version of the statute and the version that existed at the time of defendant's crimes. Only "prepositions, commas, and verb tense" have been changed. (*People* v. *Scott* (1994) 9 Cal.4th 331, 342, fn. 5 [36 Cal.Rptr.2d 627, 885 P.2d 1040].)

329 [256 Cal.Rptr. 401, 768 P.2d 1078].) In particular, other felony sex offenses prohibit the commission of certain clearly specified acts against nonconsenting victims of any age. (See §§ 243.4 [defining sexual battery as "intimate" touching of specific body parts], 261, [rape], 286 [sodomy], 288a [oral copulation], 289 [sexual penetration by foreign object]; *People* v. *Harrison, supra,* 48 Cal.3d 321, 328-330.) Each such provision describes the criminal act in precise and clinical terms. When contact with or penetration of a specific body part or cavity is required, or when use of a particular appendage or instrument is necessary to commit the offense, this fact has been made eminently clear.[6] We can only assume that the absence of similar language in section 288 was deliberate, and that the statute was intended to include sexually motivated conduct not made criminal elsewhere in the scheme. (See *People* v. *Scott, supra,* 9 Cal.4th 331, 342-343, and cases cited [indicating section 288 applies to vast array of sexually motivated acts, including those not specified in other sex crime statutes].)[7]

■ The Legislature's decision to cast a prohibited lewd act in such general terms is consistent with the basic purpose of the statute as long described by the courts. ■ As we have explained, section 288 was enacted to provide children with "special protection" from sexual exploitation. (*People* v. *Olsen* (1984) 36 Cal.3d 638, 647-648 [205 Cal.Rptr. 492,

---

[6](See, e.g., §§ 243.4, subds. (a) & (f)(1) [sexual battery involves touching of "intimate part," to wit, "sexual organ, anus, groin, or buttocks of any person, and the breast of a female"], 263, 286, subd. (a) [any penile "penetration, however slight," of vagina or anus is sufficient for rape or sodomy], 288a, subd. (a) [oral copulation involves contact between "the mouth of one person [and] the sexual organ or anus of another person"], 289, subds. (a) & (k)(1) & (2) [crime involves any "penetration, however slight" of "genital or anal openings" with a "foreign object" or with "any part of the body, except a sexual organ," or with an "unknown object" which can include any instrument, device, or body part, including a sexual organ].)

[7]The statute's history confirms that it includes, but is not limited to, acts prohibited under other sex crime statutes. As originally enacted in 1901, section 288 applied to "any lewd or lascivious act *other than* the acts constituting other [sex] crimes provided for" elsewhere in the code. (Stats. 1901, ch. 204, § 1, p. 630, italics added.) We have explained that the italicized language was intended to criminalize sexually motivated behavior which is "offensive" when committed against children but which is "not prohibited by other statutes" in the same scheme. (*People* v. *Greer* (1947) 30 Cal.2d 589, 601 [184 P.2d 512].) However, the early version of the statute encouraged defendants to argue that it *only* applied to lewd acts "other than" those proscribed in other statutes, and that commission of a rape, sodomy or other proscribed sex crime operated as a *defense* to conviction under section 288. (*Greer, supra,* 30 Cal.2d at pp. 601-602.) Such a scenario apparently was not intended by the Legislature. As a result, section 288 was amended in 1937 to delete the troublesome phrase and to specifically "includ[e]" within the statute's reach acts constituting other sex crimes. (Stats. 1937, ch. 545, § 1, p. 1562.) "Thus, it has long been settled that commission of a sex act constituting a crime under another section of the code is neither a defense to, nor a requirement of, conviction under section 288." (*People* v. *Scott, supra,* 9 Cal.4th 331, 342, fn. 5.)

685 P.2d 52].) The statute recognizes that children are "uniquely suscepti-ble" to such abuse as a result of their dependence upon adults, smaller size, and relative naiveté. (*People v. Scott, supra,* 9 Cal.4th 331, 341-342.) The statute also assumes that young victims suffer profound harm whenever they are perceived and used as objects of sexual desire. (*J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1026 [278 Cal.Rptr. 64, 804 P.2d 689].) It seems clear that such concerns cannot be satisfied unless the kinds of sexual misconduct that result in criminal liability are greatly expanded where children are concerned.

For this reason, the courts have long indicated that section 288 prohibits *all* forms of sexually motivated contact with an underage child. Indeed, the "gist" of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act. (*People v. McCurdy* (1923) 60 Cal.App. 499, 502 [213 P. 59].) "[T]he purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done. . . . If [the] intent of the act, *although it may have the outward appearance of innocence,* is to arouse . . . the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute . . . ." (*People v. Hobbs* (1952) 109 Cal.App.2d 189, 192 [240 P.2d 411], italics added, original italics omitted.)

Thus, throughout the statute's history, the cases have made clear that a "touching" of the victim is required, and that sexual gratification must be presently intended at the time such "touching" occurs. (*People v. Westek* (1948) 31 Cal.2d 469, 482-483 [190 P.2d 9]; *People v. Coontz* (1953) 119 Cal.App.2d 276, 279 [259 P.2d 694]; *People v. Schultz* (1942) 49 Cal.App.2d 38, 43-44 [120 P.2d 893]; *People v. Dabner* (1914) 25 Cal.App. 630, 632-633 [144 P. 975].) However, the form, manner, or nature of the offend-ing act is not otherwise restricted. Conviction under the statute has never depended upon contact with the bare skin or "private parts" of the defendant or the victim. (*People v. Hobbs, supra,* 109 Cal.App.2d 189, 192; *People v. Ash* (1945) 70 Cal.App.2d 583, 584 [161 P.2d 415]; *People v. Lanham* (1934) 137 Cal.App. 737, 740 [31 P.2d 410]; *People v. Dabner, supra,* 25 Cal.App. 630, 632-633.) Stated differently, a lewd or lascivious act can occur through the victim's clothing and can involve "any part" of the victim's body. (*People v. Carpenter* (1955) 137 Cal.App.2d 792, 793 [291 P.2d 189]; see also *People v. Nothnagel* (1960) 187 Cal.App.2d 219, 225 [9 Cal.Rptr. 519] [touching need not be "sexual in character"]; *People v. Hartshorn* (1943) 59 Cal.App.2d 285, 288 [138 P.2d 782] [defendant need not touch "a particular part" of victim's body].)

More recent authorities apply the same principles but tend to articulate them in more succinct terms. Like the jury instructions given in this case,

modern courts state or imply that *any* touching of an underage child is "lewd or lascivious" within the meaning of section 288 where it is committed for the purpose of sexual arousal. (See, e.g., *People* v. *Raley* (1992) 2 Cal.4th 870, 907 [8 Cal.Rptr.2d 678, 830 P.2d 712]; *People* v. *Mickle* (1991) 54 Cal.3d 140, 175-176 [284 Cal.Rptr. 511, 814 P.2d 290]; *People* v. *Levesque* (1995) 35 Cal.App.4th 530, 539 [41 Cal.Rptr.2d 439]; *People* v. *Marquez* (1994) 28 Cal.App.4th 1315, 1326 [33 Cal.Rptr.2d 821]; *People* v. *Gilbert* (1992) 5 Cal.App.4th 1372, 1380 [7 Cal.Rptr.2d 660]; *People* v. *Pitts* (1990) 223 Cal.App.3d 606, 887-890 [273 Cal.Rptr. 757]; *People* v. *Meacham* (1984) 152 Cal.App.3d 142, 152-154 [199 Cal.Rptr. 586]; *People* v. *Austin* (1980) 111 Cal.App.3d 110, 112-115 [168 Cal.Rptr. 401]; *People* v. *Dontan-ville* (1970) 10 Cal.App.3d 783, 795-796 [89 Cal.Rptr. 172].)

▮ Of course, the manner of touching is not irrelevant under this view. "[T]he trier of fact looks to all the circumstances, including the charged act, to determine whether it was performed with the required specific intent." (*People* v. *Scott, supra*, 9 Cal.4th 331, 344, fn. 7; accord, *People* v. *Owen* (1945) 68 Cal.App.2d 617, 619 [157 P.2d 432]; *People* v. *McCurdy, supra*, 60 Cal.App. 499, 502.) Other relevant factors can include the defendant's extrajudicial statements (*People* v. *Cantrell* (1973) 8 Cal.3d 672, 681 [105 Cal.Rptr. 792, 504 P.2d 1256]), other acts of lewd conduct admitted or charged in the case (*People* v. *Ewoldt* (1994) 7 Cal.4th 380, 402 & fn. 6 [27 Cal.Rptr.2d 646, 867 P.2d 757]; *People* v. *Gilbert, supra*, 5 Cal.App.4th 1372, 1380), the relationship of the parties (*People* v. *McCurdy, supra*, 60 Cal.App. 499, 502-503), and any coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection (*People* v. *Hyche* (1942) 52 Cal.App.2d 661, 664 [126 P.2d 885]).

▮ Defendant suggests that the foregoing cases are entitled to little weight because the Legislature has never amended the statute to reflect the "any touching" rule, and because the Legislature's silence cannot be viewed as acceptance of such a construction. While we have often said that legislative inaction is a "weak reed" on which to lean in ascertaining the statutory intent (*People* v. *King* (1993) 5 Cal.4th 59, 77 [19 Cal.Rptr.2d 233, 851 P.2d 27] and cases cited), this principle does not apply here.

Section 288 has been amended more than 10 times since it was enacted in 1901. Although several significant changes have been made, the basic elements of the offense have remained the same.[8] Moreover, all but one of these amendments occurred before 1990, during which time the courts

---

[8]For example, section 288 has been expanded beyond its original scope to prohibit lewd conduct committed by force or other compulsion (*id.,* subd. (b)), and to protect 14- and 15-year-old victims from lewd acts committed by a defendant who is at least 10 years older

consistently articulated the crime in terms of undifferentiated, sexually motivated "touchings." The Legislature has never expressed dissatisfaction with this approach or otherwise attempted to restrict the acts that can be found "lewd or lascivious" under the statute. In light of this history, we can only assume that the Legislature is aware of the manner in which the offense has been judicially construed and that it has refrained from modifying the substantive terms because it accepts the prevailing view. We generally adhere to the settled construction of a statute under such circumstances. (*People* v. *Leahy* (1994) 8 Cal.4th 587, 604 [34 Cal.Rptr.2d 663, 882 P.2d 321]; *People* v. *Hardy* (1992) 2 Cal.4th 86, 163 [5 Cal.Rptr.2d 796, 825 P.2d 781]; *In re Gladys R.* (1970) 1 Cal.3d 855, 868-869 [83 Cal.Rptr. 671, 464 P.2d 127]; see also *People* v. *Bouzas* (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076].)

We are also aware that section 288 has been incorporated by reference into many other statutes, including special sentencing provisions,[9] public reporting requirements,[10] procedural rules,[11] and professional licensing sanctions.[12] In addition, conviction, commission, or contemplation of lewd acts

---

(*id.,* subd. (c)). Other amendments have added subdivisions encouraging public officials to "consider the needs" of the victim in all cases arising under the statute (*id.,* subd. (d)), and authorizing substantial monetary fines (*id.,* subd. (e)). The terms of imprisonment set forth in section 288, subdivisions (a) and (b) have been increased several times and other miscellaneous language changes have been made.

[9](See, e.g., §§ 190.2, subd. (a)(17)(v) [special circumstance], 292 [bail restriction], 667.5, subd. (c)(6), 667.51, subds. (a)-(d), 667.6, subds. (a)-(d), 667.61, subd. (c), 667.7, subd. (a), 667.71, subd. (d), 667.72, subd. (a), 667.8, subds. (a) & (b) [violent and recidivist sex offenders], 667.83, subd. (a) [ritual abuse], 667.15 [use of sexually explicit material], 674 [day-care defendants], 999*l*, subd. (a) [repeat sexual offender prosecution program], 1000.32, subd. (a) [special counseling], 1170.1, subd. (i) [unlimited enhancements], 1170.71 [use of obscene material], 1173.2, subd. (b)(7), 1174.4, subd. (a)(2)(G) [ineligibility for alternative sentencing program], 1192.7, subd. (c) [plea bargaining restriction], 1202.05, subds. (a) & (b) [limit on prison visits], 1203, subd. (e)(5), 1203.065, subd. (b), 1203.066, subd. (a), 1203.08, subd. (c) [probation restrictions], 2933.5, subd. (a)(2)(J), 3057, subd. (d)(2)(C) [limitations on credits], 12022.3 [weapon involved in offense], 12022.8 [great bodily injury inflicted during offense]; Welf. & Inst. Code, §§ 707, subds. (b)(6) & (c) [presumptive unfitness under juvenile law], 1732 [no Youth Authority for 18-year-old recidivists].)

[10](See, e.g., §§ 290 et seq. [sex offender registration], 11160, subd. (d)(20) [reports by health workers], 11164 et seq. [Child Abuse and Neglect Reporting Act].)

[11](See, e.g., Evid. Code, §§ 767, subd. (b) [direct examination of victim], 782, subd. (a) [limited inquiry into victim's sexual history]; Pen. Code, §§ 868.5, subd. (a) [support person for victim at trial], 868.8 [victim's comfort in courtroom], 1346, subd. (a) [videotaping victim's testimony], 1048, subd. (b) [expediting trial].)

[12](See, e.g., Bus. & Prof. Code, § 2236.1 [physicians]; Ed. Code, §§ 44010, subd. (a), 44346, subd. (a)(2), 44425, 44836, 45123, subd. (a), 87010, subd. (a), 87405, subd. (a), 88022, 88123 [teachers and school workers]; Health & Saf. Code, §§ 1337.9, subd. (b) [nurses], 1524, subd. (d), 1568.061, subd. (d), 1569.19, subd. (d), 1596.858, subd. (d), 1736.5 [various care facilities]; Veh. Code, § 13377, subd. (a)(3) [tow truck drivers].)

within the meaning of section 288 forms the basis of other criminal offenses.[13] Under basic principles of stare decisis, we are particularly reluctant to disturb any judicial construction of a statute which has been in existence for a significant period of time and upon which the Legislature may have relied in enacting and shaping other provisions. (*People* v. *Latimer* (1993) 5 Cal.4th 1203, 1212-1216 [23 Cal.Rptr.2d 144, 858 P.2d 611].)

Defendant nonetheless asks that we reevaluate the conduct needed to sustain a conviction under the statute. He argues that all prior references to the "any touching" rule are mere "dictum" and should be ignored. Defendant suggests that this rule only appears in cases where the defendant claimed no touching had occurred, where the sufficiency of the charged act was not challenged on appeal, or where the act was clearly "lewd" because it involved a touching of the "genitals, buttocks, or female breast."

Defendant is mistaken. Reviewing courts have repeatedly declined to reverse a guilt judgment or grant other relief in the face of a defense claim that the evidence or instructions permitted conviction for conduct that was purportedly too innocuous to violate section 288. (See, e.g., *People* v. *Gilbert, supra,* 5 Cal.App.4th 1372, 1380 [babysitter rubs victim's lower back, stomach, and thigh; lewd intent inferable largely from charges of sexual intercourse and genital contact involving other victims]; *People* v. *Austin, supra,* 111 Cal.App.3d 110, 113-114 [armed stranger pushes victim into more isolated spot where she is compelled to lower her pants; neither touching found deficient as a matter of law]; *People* v. *Dontanville, supra,* 10 Cal.App.3d 783, 795-796 [stranger places hand inside victim's pants and rubs her stomach or crotch; conviction proper under either view of the evidence]; *People* v. *McCurdy, supra,* 60 Cal.App. 499, 500-503 [defendant pinches girl's leg on public coach and embraces her after they exit; other passenger assumed defendant was victim's grandfather; lewd intent inferable from defendant's identity as stranger and sexual propositions made during the embrace]; see also *People* v. *Huston* (1943) 21 Cal.2d 690, 694-695 [134 P.2d 758] [suggesting conviction can occur where defendant kissed victim during "kissing games" he played with neighborhood children]; *People* v. *Campbell* (1947) 80 Cal.App.2d 798, 799-800 [182 P.2d 626] [assuming statute applies where defendant and victim danced, embraced, and flirted on couch].)[14]

More fundamentally, defendant argues that the "any touching" rule contravenes the plain meaning of the statutory language. Defendant observes

---

[13](See, e.g., §§ 136.7 [victim or witness harassment], 189 [felony murder], 207, subd. (b) [kidnapping], 220 [assault], 266j [procurement], 288.5, subd. (a) [continuous sexual abuse], 314 [indecent exposure], 626.8, subds. (a) & (c) [disruptive presence at schools], 653f, subd. (c) [solicitation].)

[14]Defendant relies heavily on *People* v. *Webb* (1958) 158 Cal.App.2d 537 [323 P.2d 141]. There, a school janitor was convicted under sections 288 and 288a based on an act of oral

that the phrase "lewd or lascivious act" appears in section 288 in addition to language describing the "sexual" nature of the criminal "intent." (*Id.,* subd. (a).) Defendant argues that each such phrase—lewd act and sexual intent—must be given separate effect, and that a contrary approach violates the general rule requiring courts to construe a statute so as to avoid surplusage. A minority of courts share this basic view of section 288, including *Wallace, supra,* 11 Cal.App.4th 568, 578, and the Court of Appeal in this case. (See also *People* v. *Castro* (1994) 30 Cal.App.4th 390, 398-399 [35 Cal.Rptr.2d 839]; *People* v. *Sharp* (1994) 29 Cal.App.4th 1772, 1792 [36 Cal.Rptr.2d 117]; *People* v. *Gaglione* (1994) 26 Cal.App.4th 1291, 1297-1298 [32 Cal.Rptr.2d 169]; *People* v. *Filson* (1994) 22 Cal.App.4th 1841, 1852 [28 Cal.Rptr.2d 335]; *People* v. *Self* (1993) 12 Cal.App.4th 1222, 1226 [16 Cal.Rptr.2d 67].)

However, the maxim of statutory construction upon which defendant and the minority rely is not absolute. ■ We will not parse each literal phrase of a statute if doing so contravenes the obvious underlying intent, or leads to absurd or anomalous results. (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 485 [208 Cal.Rptr. 724, 691 P.2d 272]; *People* v. *Barksdale* (1972) 8 Cal.3d 320, 334 [105 Cal.Rptr. 1, 503 P.2d 257].) Nor will such an approach be used where no distinct meaning can reasonably be assigned to each phrase." '[W]ords of general import may be given a contracted meaning dependent upon the connection in which they are employed . . . .' [Citations.]" (*Bruce*

---

copulation performed with a young boy in a school restroom. On appeal, the defendant argued that he could not be punished twice for the same criminal act under section 654. The court agreed and set aside one of the convictions under principles no longer used for remedying section 654 violations. (See *People* v. *Scott, supra,* 9 Cal.4th 331, 347-348, fn. 9 [sentence now stayed, rather than conviction reversed].) In so doing, the court rejected the Attorney General's claim that the convictions were not duplicative because the section 288 count was based on evidence that the victim was led by the shoulder into the restroom and was touched in another unspecified way before the oral copulation occurred. The court indicated that such acts were too "casual" and "preparatory" to prevent reversal of one count on appeal. (*People* v. *Webb, supra,* 158 Cal.App.2d 537, 542; accord, *People* v. *Perkins* (1982) 129 Cal.App.3d 15, 19-21 [180 Cal.Rptr. 763].) Defendant relies on this language here, claiming that it narrowly limits the range of conduct to which section 288 can apply. However, any such suggestion in *Webb, supra,* 158 Cal.App.2d 537, is entitled to little weight. The court never discussed cases allowing conviction for all sexually motivated "touchings," nor did it acknowledge that section 288 had been construed in this manner. At most, *Webb* stands for the proposition that the defendant could not be fairly *punished* for any touchings that were purely incidental to the oral copulation, whether or not such touchings otherwise violated section 288.

In addition, defendant's reliance on *People* v. *Memro* (1985) 38 Cal.3d 658 [214 Cal.Rptr. 832, 700 P.2d 446], is misplaced. There, we noted in passing that a violation of section 288 involves commission of an act that is " 'lustful, immoral, seductive or degrading.' " (38 Cal.3d at p. 697.) Nothing in this language conflicts with our present statutory analysis. In essence, *any* touching of an underage child for a sexual purpose is, within the words of *Memro,* a "lustful, immoral, seductive [and] degrading" act.

v. *Gregory* (1967) 65 Cal.2d 666, 674 [56 Cal.Rptr. 265, 423 P.2d 193].) We are not required to assume that the Legislature has chosen "the most economical means of expression," particularly where a statute of venerable origin is involved. (*Voters for Responsible Retirement* v. *Board of Supervisors* (1994) 8 Cal.4th 765, 772-773 [35 Cal.Rptr.2d 814, 884 P.2d 645].)

**▆** As we have seen, the hyperliteral view of section 288 advanced by defendant and a minority of courts runs counter to the long-standing construction of the statute—a construction that is consistent with its overall language, context, and purpose. The minority view also suffers from certain semantical and logical flaws.

In the first place, we have already recognized that the successive phrases of section 288 are archaic and logically redundant to some degree. Contrary to what defendant implies, there are *three* such phrases, not two. Section 288 applies on its face to anyone who "*willfully and lewdly*" commits "*any lewd or lascivious act*" upon or with the body of the victim "*with the intent of arousing . . . the lust, passions, or sexual desires*" of either party. (*Id.,* subd. (a), italics added.)

In *In re Smith* (1972) 7 Cal.3d 362 [102 Cal.Rptr. 335, 497 P.2d 807] (*Smith*), we relied on this language to determine the circumstances under which an act is "willfully and lewdly" performed for purposes of indecent exposure under section 314. We concluded that no separate meaning can be ascribed to the literally distinct requirements of section 288, subdivision (a), that the act be done "willfully and lewdly" and "with [sexual] intent." As commonly understood, both phrases overlap and refer to a single phenomenon—"sexual motivation." (*Smith, supra,* 7 Cal.3d at p. 366.)

The additional requirement of a "lewd or lascivious act" seems redundant for similar reasons. Nothing in the ordinary meaning of this phrase refers to particular forms of physical contact or sexual activity.[15] In addition, the statute specifically prohibits contact with "any part" of the victim's body. (§ 288, subd. (a).) As suggested in *Smith*, we can only conclude that the touching of an underage child is "lewd or lascivious" and "lewdly" performed depending entirely upon the sexual motivation and intent with which it is committed.

To the extent *Wallace, supra,* 11 Cal.App.4th 568, and its progeny depart from this construction, they do not withstand scrutiny. According to *Wallace,*

---

[15]As observed in *Smith, supra,* 7 Cal.3d 362, 365, "[t]he relevant dictionary meaning of 'lewd' is 'sexually unchaste or licentious,' 'dissolute, lascivious,' 'suggestive of or tending to moral looseness,' 'inciting to sensual desire or imagination,' 'indecent, obscene, salacious.' (Webster's New Internat. Dict. (3d ed. 1961) p. 1301.)" Similarly, the word "lascivious" means "tending to arouse sexual desire"; it is synonymous with "lewd, lustful," "libidinous, salacious." (*Id.* at p. 1274.)

a statutory violation occurs only where the defendant commits an act that is both sexually motivated and "sexual." (*Id.* at p. 579.) *Wallace* defined a "sexual" act as any touching of the victim that appears "sexually indecent," or calculated to "arouse sexual desire," from the perspective of an "objectively reasonable person." (*Ibid.*, italics omitted.) The court did not elaborate on these terms other than to suggest that disrobing a child or touching his or her "private parts" would suffice. (See *id.* at pp. 574-575.) The *Wallace* court also indicated that many acts are inherently "innocuous" and innocent even where sexual arousal is intended, "such as brushing a child's hair or touching [his or her] arm." (*Id.* at p. 580.)

 However, the lewd character of an activity cannot logically be determined separate and apart from the perpetrator's intent. It is common knowledge that children are routinely cuddled, disrobed, stroked, examined, and groomed as part of a normal and healthy upbringing. On the other hand, any of these intimate acts may also be undertaken for the purpose of sexual arousal. Thus, depending upon the actor's motivation, innocent or sexual, such behavior may fall within or without the protective purposes of section 288. As the vast majority of courts have long recognized, the only way to determine whether a particular touching is permitted or prohibited is by reference to the actor's intent as inferred from all the circumstances. As *Wallace* appears to concede, any other construction could exempt a potentially broad range of sexually motivated and harmful contact from the statute's reach. In light of the statutory purpose, we cannot conceive that the Legislature intended such a result.[16]

 As an alternative to the tests adopted by *Wallace* and the instant Court of Appeal, defendant proposes his own definition of a "lewd or

---

[16]We note that the instant Court of Appeal generally followed *Wallace, supra,* 11 Cal.App.4th 568, but adopted a different definition of a "lewd or lascivious act." The court in the present case was apparently concerned that *Wallace* was too restrictive and might encourage sexually motivated contact with children, particularly by strangers. Thus, a "lewd" act was defined below as any touching of an underage child which appears "sexually indecent" to a reasonable person under the "totality of the circumstances," including any predatory conduct by a stranger. (Accord, *People* v. *Sharp, supra,* 29 Cal.App.4th 1772, 1789-1795.) In adopting this test here, the court remarked that certain sexually motivated acts which are "lewd" and prohibited when committed by a stranger under section 288 would be "innocent" and apparently permissible when committed by a relative or close acquaintance of the victim. However, this approach is flawed for reasons similar to those we have identified in *Wallace, supra,* 11 Cal.App.4th 568. Contrary to what the instant Court of Appeal implies, the "circumstances" which bear on the "sexual" nature of the encounter are those facts which indicate that the actor touched the child in order to obtain sexual gratification. For this reason, the trier of fact has always been free to consider the relationship of the parties, the nature of the touching, and the presence or absence of any nonsexual purpose under section 288. Moreover, nothing in the statute suggests that its application *necessarily* depends in some cases upon the identity of the perpetrator. Indeed, the statute broadly applies to "[a]ny person" who violates its terms. (*Id.,* subds. (a)-(c).) It would be anomalous to conclude that family members and other persons in whom children place the most trust have greater rights to touch

lascivious act." Defendant argues that no violation of section 288 occurs absent a touching of the genitals, buttocks, or female breast. All other sexually motivated contact between a defendant and an underage child is immune from prosecution under this view.

We find no evidence that the Legislature intended to define the crime in such narrow terms. As noted earlier, neighboring statutes describe the precise manner in which prohibited sex acts must occur, including contact with particular parts of the body such as a sexual organ. (See *ante,* pp. 442-443.) In addition, section 243.4 defines sexual battery as certain sexually motivated, nonconsensual touchings of an "intimate part" of another person's body, to wit, "sexual organ, anus, groin, or buttocks of any person, and the breast of a female." (*Id.,* subd. (f)(1).) If the Legislature had intended to define section 288 in terms of such specific intimate bodily contact it could easily have done so. The absence of such language in section 288 strongly suggests that such touchings are not restricted in this manner.[17]

Defendant insists that dire "social" consequences will ensue if we conclude that section 288 applies to every sexually motivated touching of an underage child. He predicts that this approach will deter adults from touching children in appropriate ways, will increase the number of false accusations of child abuse based on wholly innocent acts, and will overwhelm public agencies charged with investigating such matters.

---

such children in sexually motivated and harmful ways. (Cf. § 1203.066, subd. (c) [sentencing restrictions where molester and victim stand in close relationship].)

[17]In other words, defendant appears to suggest that both the sexual battery and lewd conduct statutes involve similar intimate touchings performed for a sexual purpose, except that sexual battery also requires that the act be committed "against the will" of a victim who is unlawfully restrained or incapacitated. (§ 243.4, subds. (a)-(d).) However, nothing in the language or history of section 288 suggests that it differs from section 243.4 only insofar as victim consent is concerned. (See *People* v. *Toliver* (1969) 270 Cal.App.2d 492, 496 [75 Cal.Rptr. 819] [lack of consent not an element under section 288, subdivision (a)].) Unlike section 243.4, section 288 does not explicitly require contact with certain intimate parts of the victim's body. In addition, section 288 had been construed to apply to *all* sexually motivated touchings long before section 243.4 was enacted. The more likely inference is that when the Legislature enacted section 243.4 in 1982, it intended to provide unwilling victims of *any* age with *some* of the protection from sexually offensive contact already available to young children under section 288.

We also reject defendant's suggestion that section 288 is merely duplicative of other statutes insofar as it is construed to apply to any touching committed with lewd intent. Some of the provisions cited by defendant are misdemeanors. (See §§ 272 [contributing to delinquency or dependency of minor], 647.6, subd. (a) [annoying or molesting a minor].) None require both actual physical contact with the victim and a present intent to receive or give immediate sexual gratification. (See §§ 207, subd. (b) [kidnapping for purpose of committing lewd act], 220 [assault with intent to commit lewd act], 266j [procurement of child for purpose of committing lewd act], 288/664 [attempted commission of lewd act].) Nothing in these provisions casts doubt upon the long-standing construction of section 288 which we reaffirm today.

The cases belie such a claim. The construction challenged by defendant has been in effect for decades with no suggestion that it has created the problems he describes. As defendant's own survey of the law reveals, convictions have been obtained and upheld only where the defendant's lustful intent was manifest under the particular circumstances. In all cases arising under the statute, the People are required to prove that the defendant touched the child in order to obtain immediate sexual gratification. We have no reason to believe that charges will be filed or sustained where no such evidence exists.

We reiterate that the circumstances of the touching remain highly relevant to a section 288 violation. The trier of fact must find a union of act and sexual intent (see § 20), and such intent must be inferred from all the circumstances beyond a reasonable doubt. A touching which might appear sexual in context because of the identity of the perpetrator, the nature of the touching, or the absence of an innocent explanation, is more likely to produce a finding that the act was indeed committed for a sexual purpose and constituted a violation of the statute. On the other hand, if the trier of fact *is* persuaded beyond a reasonable doubt, from all the circumstances, that the touching of a child *was* sexually motivated, nothing in the language, history, or purpose of section 288 indicates that the touching should escape punishment simply because it might not be considered a means of sexual gratification by members of the mainstream population.

For all the foregoing reasons, we adhere to the long-standing rule that section 288 is violated by "any touching" of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child. To the extent they are inconsistent with this view, the following cases are disapproved: *People* v. *Castro, supra,* 30 Cal.App.4th 390, 398-401; *People* v. *Sharp, supra,* 29 Cal.App.4th 1772, 1789-1795; *People* v. *Gaglione, supra,* 26 Cal.App.4th 1291, 1296-1299; *People* v. *Filson, supra,* 22 Cal.App.4th 1841, 1852; *People* v. *Self, supra,* 12 Cal.App.4th 1222, 1226-1227; and *People* v. *Wallace, supra,* 11 Cal.App.4th 568, 574-580.

Here, the jury was properly instructed on the meaning of a "lewd or lascivious act." There also was ample evidence from which the jury could conclude that defendant had committed such an act as charged in both counts 1 and 2. The crimes were committed a short time and distance apart in places where young children were likely to be found—a junior high school and a park. On each occasion, defendant grabbed a 13-year-old girl and forcibly held her against his body until witnesses intervened and allowed each victim to escape. Because neither girl knew defendant and because he behaved in a predatory fashion, no purpose other than sexual gratification reasonably appears.

Moreover, the evidence indicates that defendant intended to receive such gratification when he wrapped his arms around each girl. According to Christina, defendant was actually aroused during the embrace. He apparently spoke in tender tones and tried to kiss her in an ostentatious and passionate way. The jury could infer that when this initial lewd encounter went awry, defendant simply found another victim—Magali—and resumed the attack. Based on the evidence and instructions at trial, the jury could properly find defendant guilty of violating section 288, subdivision (b), with respect to both girls. It is irrelevant to this determination whether defendant actually succeeded in kissing Christina and touching Magali's breasts, or whether he intended to commit any additional criminal acts against either victim.

### III. DISPOSITION

The judgment of the Court of Appeal is reversed insofar as that court reversed the lewd conduct conviction in count 2. In all other respects, the judgment is affirmed.

Lucas, C. J., Kennard, J., Arabian, J., George, J., and Werdegar, J., concurred.

**MOSK, J.**—I concur in the judgment on the facts of this case. I do so because I read Penal Code section 288, subdivision (a), to impliedly define a "lewd or lascivious act" as any conduct committed "with the intent of arousing, appealing to, or gratifying" the "lust," "passions," or "sexual desires" of either the perpetrator or the underage victim.